### The People ex rel. v. Albert L. Hendee.

1. STATUTES—*Act of 1898 in Regard to Assessments, Construed.*—In the enactment of "An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named," in force July 1, 1898, it was not the intention of the General Assembly to require the county clerk to procure and provide duplicate assessment books for the listing and assessment of personal property, to be delivered to the supervisor of assessments for the use of the assessors.

Mandamus.—Error to the Circuit Court of Lake County; the Hon. CHARLES H. DONNELLY, Judge presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed June 8, 1903.

R. W. COON, attorney for plaintiffs in error.

WHITNEY, UPTON & WHITNEY, attorneys for defendant in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a petition for a mandamus by George N. Gridley, supervisor of assessments of Lake county, as relator, against Albert L. Hendee, county clerk of said county, and involves a construction of the statute, to determine whether

the county clerk is required to make and deliver to the supervisor of assessments, duplicate books for the assessment of personal property. The petition, after setting out various sections of the law in relation to assessments, made the following, among other allegations:

"That the said Albert L. Hendee, county clerk as aforesaid, has wholly neglected and refused to procure and provide for delivery to your petitioner, duplicate assessment books as requested by your petitioner and as required by law, and has wholly neglected and refused, and does still neglect and refuse to procure and provide duplicate assessment books for the year 1902, for the townships and assessment districts of said county, and for the delivery to the supervisor of assessments of said county for the use of the assessors of said county, in which may and shall be listed and set down the personal property assessed by the assessors of the said townships for the year 1902, and in which the said blanks for the said personal property assessed shall be bound, with the lists and assessments of the real property; that the said clerk has procured and provided duplicate assessment books for the townships and assessment districts of said county, one of which for each township and assessment district has printed on the outside thereof, 'Supervisor of Assessments' Copy,' and the other has printed on the outside thereof, 'County Clerk's Copy;' that the latter described copy contains the blanks for the lists of lands and lots and also blanks for the listing of personal property and tabulating assessment for personal property, and that the former copy contains the blanks for lists of lands and lots, and no blanks for the list and assessment and tabulating assessment of personal property; and that the said Albert L. Hendee has neglected and refused to procure and provide duplicate assessment books containing blanks for the listing and assessment of personal property of the townships and assessment districts of the county for the year 1902, and to be delivered to the supervisor of assessments of said county, for the use of the assessors of the townships of the county."

The prayer of the petition was that a writ of mandamus be directed "issued to the said Albert L. Hendee, county clerk, as aforesaid, commanding him to procure and provide for the township and assessment districts of said county, and for delivery to the petitioner, and for the use

of the assessors of the townships of the county of Lake, duplicate assessment books for lists of personal as well as real property," etc.

A demurrer was sustained to the petition, and the relator having stood by his petition, appealed from the judgment of the court below to the Supreme Court, where the appeal was dismissed for want of jurisdiction. (The People v. Hendee, 199 Ill. 55.) The relator now brings the case to this court by writ of error.

The demurrer was general and special, and one of the special causes set forth was that it did not appear from the petition that any duty was imposed upon the county clerk to make up duplicate assessment books for lists of personal as well as real property. This makes it necessary for us to examine the laws in reference to the subject of assessments. Section 2 of "An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named," in force July 1, 1898, provides, that in counties under township organization of less than 125,000 inhabitants, the county treasurer shall be ex-officio supervisor of assessments in his county. Section 10 provides that the county clerk shall, before the first day of April, 1889, and every fourth year thereafter, make up in duplicate, in books to be provided for that purpose, the lists of lands or lots to be assessed for taxes in the manner provided in the general revenue law; also that he shall annually, before the first day of April, make up lists of lands and lots which are taxable or which shall become taxable for the first time and which are not already listed, etc. Section 11 provides that it shall be the duty of the supervisor of assessments to call upon the county clerk on or before the first day of April in each year and receive the assessment books and blanks as prepared by the county clerk for the assessment of property for that year. Sections 12 and 13 provide that the assessment of real estate shall be made by the assessor every fourth year, and that all lists, valuations and entries shall be made in duplicate assessment books. Sections 15, 16 and 17 provide for the assessment of per-

sonal property to be made by the assessor, but these three sections do not provide that the lists, valuations and entries made by the assessor shall be made in duplicate assessment books. Section 21 provides that the township assessor shall on or before the first day of June, for the year for which the assessment is made, return the assessment books to the county supervisor of assessments, and prescribes the form of oath to be attached by the assessor to each book, which is as follows:

"STATE OF ILLINOIS, } ss.
 County of ——, }

I do solemnly swear that the book or books, —— in number, as the case may be, to which this affidavit is attached, contains a full and complete list of all of the real and personal property in the township or assessment district herein described, subject to taxation for the year —— so far as I have been able to ascertain the same, and that the assessed value set down in the proper column opposite the several kinds and descriptions of property is a just and equal assessment of such property according to law."

Section 38 also provides for a substantially similar affidavit to be attached to each of the assessment books, signed by at least two members of the board of review when it shall have completed its work. Section 27 provides that the supervisor of assessments when requested shall deliver to any person a copy of the descriptions, schedule, return or statement of property assessed in his name or in which he is interested and the valuation placed thereon by the assessor or the board of review. Section 28 provides that the supervisor of assessments shall deliver all schedules and statements of personal property which have been received or made up by him to the board of review when required by them in the performance of their duties; that such schedules after the assessment is fully completed, shall be returned to the supervisor of assessments and be preserved for at least two years. Section 43, which follows the section detailing the powers and duties of the board of review, provides as follows:

" When the books are so completed the board of review

shall deliver one set of the duplicate books containing the assessment of real property and the set of books containing the assessment of personal property to the county clerk, who shall file the same in his office and return the other set of duplicate books containing the assessment of real property to the county assessor, supervisor of assessments or ·board of assessors as the case may be, and the books returned to the county assessor, or supervisor of assessments or board of assessors, shall remain in his or their office and be open to the inspection of all persons."

The above appear to be all the sections of the statute which bear upon the subject under consideration.

There is no question but that the law plainly provides for the making of duplicate assessment books for the assessment of real estate.

Plaintiff in error argues, however, that the wording of the above affidavits, provided for by sections numbered 21 and 38, show an evident intention of the law that the assessment of real and personal property should be entered in the same book, and that consequently it is the duty of the county clerk to deliver to the supervisor of assessments for the use of the assessor's duplicate assessment books for lists of personal property as well as real property. He also insists that section No. 27 above referred to, which provides that the supervisor of assessments shall, when requested, deliver to any person a copy of the description, schedule, return or statement of property assessed in his name or in which he is interested and the valuation placed thereon by the assessor or the board of review, shows an intention that the supervisor of assessments should have a duplicate book containing the personal assessment. If, however, the General Assembly had any such intention in regard to the assessment of personal property, it can only be ascertained by implication, not from the direct language of the law; for there is no provision of the law, expressly requiring the clerk to furnish duplicate books and lists for the assessment of personal property, as there is in case of the assessment of real estate. On the contrary, section No. 43 above set forth, expressly states that one set of the duplicate books

containing the assessment of real property, and "the set of books" containing the assessment of personal property, shall be delivered by the board of review to the county clerk, who shall file the same in his office, and that they shall return the other set of duplicate books, containing the assessment of real property, to the county assessor, supervisor of assessments or board of assessors, as the case may be. There can be no question but that this section contemplates only one set of books containing the assessment of personal property. It is contended by plaintiff in error that the wording of section No. 43 in effect sets aside the provisions of prior sections. We are of opinion, however, that it is not necessary to set aside the former sections in order to give this section its manifest meaning; that when the several sections of the statute, including section 43, are construed together, as they should be, it clearly appears that it was not the intention of the general assembly to require the county clerk to procure and provide duplicate assessment books for the listing and assessment of personal property, to be delivered to the supervisor of assessments for the use of the assessors.

The demurrer to the petition was therefore properly sustained and the judgment of the court below is affirmed.